on behalf of Mr. Sidamon-Eristoff and Mr. Harris. Very good. Judge Fisher, are you fine? Would you like to take a break? Are we okay? I'm fine. May it please the Court, Your Honor. The District Court erred in two important and crucial ways. First, the District Court miserred in suggesting that Texas be New Jersey and its successor cases in any way infringe the rights of the State to claim the property at issue here or granted some sort of unexpressed right to the holders of property that do not belong to them. So in your view, it has to be a State versus State situation? Your Honor, that is what the Court was addressing in Texas, Pennsylvania, and Delaware, were conflicting claims by the State who, under the Court's original jurisdiction, had subjected themselves to the Court as the constitutional mechanism to resolve that conflict. But the conflict is going to exist. The conflict clearly exists. And it seems to me the trial judge gave some very good examples as to irreconcilable conflicts and why the Texas-Delaware-Pennsylvania cases ought to be applied in this manner. Your Honor, the Texas law rules, the first priority and second priority rules, as applied in Delaware and Pennsylvania, did not address the situation where there was some residuum of property that was not being claimed by another State. Those cases did not suggest or transfer some authority over these unclaimed properties to the holder, nor did they preserve some unspoken ability of them to capture the properties through locational decisions that weren't addressed in those cases. Why isn't the tertiary rule here effectively an exception to the second rule of Texas? It is not an exception, Your Honor. Why not? Because it only becomes operative in the event that the property is not distributable among the States under the first or second rule. So if the State of Incorporation can eschew the properties, if there's address information, then of course the last known address on the debtor's books and records can take it. If not, it's the State of Incorporation. If either of those two conditions are met, the third priority does not become operative. The third rule only comes into effect and preserves those properties for either of the first two priority States in the absence of legislative action by those States. It preserves that property in perpetuity. It provides other States a record of what property is available, and it provides an easy mechanism for those States to claim that property through the State of New Jersey. An easy mechanism? I mean, it seems to me that those opinions are quite strong in saying they don't want the courts to go through a complicated factual analysis when these conflicts arise. That is correct, Your Honor. That is absolutely correct. Which the tertiary rule would certainly make all of these cases completely fact-based and disharmonious, I think, in application and in the kinds of decisions that would be rendered. Your Honor, just like the rules established in Texas, it's a simple fact-based inquiry. Is there an address for the purchaser, for the debtor? If the answer is no, then it goes to the State of Incorporation, which is an easy fact-based inquiry. If neither of those conditions are met, then it goes to where the place of transaction occurred. Also a simple factual inquiry. It doesn't leave any legal issues unexplored or open. It doesn't, by the history of both experience over the 30-plus years this has been on the books of so many States, there is no litigation over this, Your Honor. It has not in any way destabilized or inharmonious, you know, disharmonized the States, the different States' administration of the unclaimed property. In fact, it advances it by preserving the property for other States and for a claim by the rightful owner. In contrast- That may have States that may have absolutely no connection.  So that is a connection. It's a simple- Well, the Supreme Court didn't think it was much of a connection. I mean, they've rejected that principle several times. They did not reject that principle. I mean, what Texas, the State of Texas was suggesting was more of a personal jurisdiction sort of analysis to a sheet, and that works fine as long as there's only one State claiming it. When there's more than one State, that's when the Supreme Court invite, you know, Western Union, they basically invited the States to come in and exercise the Court's original jurisdiction, and that's what they were addressing in Texas, was how do we prioritize these different claims among the States knowing that the property, that the holders, detours who have no claim to the property, the sum of their constitutional protections is protection against double liability. So in that scheme, in that system, the third priority works perfectly well. The holder is still protected against any claim of double liability. No other State can also come at it for the same funds. Instead, they come to New Jersey, and through administrative processes of reporting and transfer, they're able to reclaim the funds from New Jersey. As opposed to the rule that, you know, fashioned by the District Court, where these funds are able to be taken to States with no reporting mechanism, and they're lost forever from the State who subsequently passes a law granting its own residents the right to, or changing its own laws to allow for the custodial as chief of these properties. So it directly advances and supports the Texas rules. Part of implied preemption is that it stands in the, the implied preemption doctrine isn't even applicable here, because there's two things that you can't, that third priority doesn't offend. One is it doesn't stand as an obstacle to the Texas priority rules, which, as the State's briefs have explained, don't even apply to this situation. And it's not impossible, it doesn't make it difficult for, it doesn't at all affect the holder's ability to comply with both State and Federal law. The holders under Federal common law have no obligation under Federal common law. It is only an ordering of priorities among the States. What Delaware and Pennsylvania rejected was not any variation, any additional things, but rather the other States were trying to displace and to come up with a new rule, an exception to the Texas rules. The third priority at issue in this case, which the District would have validated, works with that rule and it doesn't, the States entitled to the property under the first or second rule are still entitled to it. It doesn't affect those States' rights at all. It preserves them. And if we, if we were to disagree with trial judge on the, the deference that should be given to the guidances of the New Jersey Treasurer, your argument would still be the same? My response would be twofold, Your Honor. One, the challenges to the Treasurer's guidance are fully questions of State law that this Court should need not consider, and certainly if plaintiffs or others wish to raise State law claims challenging the issuance of those guidances, they are free to do so in the State appellate division courts. The, but the District Court properly applied New Jersey law to the extent that it should have or deferred, as you know, the State argued that it should just defer to the Treasurer, but properly deferred that the Treasurer was exercising his expertise in the administration and responsibility to administer those States' own property laws. The guidances spell out clearly and plainly for the holder community, the reporting mechanisms that they're supposed, and their obligations under Chapter 25. Wouldn't allowing tertiary rules like the one that you're advocating, in a practical sense, result in competing State claims to abandoned property? What, the short, I mean, because the District Court gave some pretense to that idea that you end up with conflicts between the States, but first history has shown that the tertiary rules have not created any conflict. And second, in the event that they were to, the holder, it's legally indifferent to the holder which State claims it, and in the event that there is a conflict, if two States create different tertiary rules, arguably those rules are of equal status amongst themselves, and it's only the State entitled to it under the first or second rule that would have a reasonable argument under Federal Common Law. Maybe, maybe. I mean, this is where it, and if other States start to enact three-year presumptive periods, or three-year abandonment periods, we may get more conflicts than we've had in the past. So I'm not sure that your argument that this hasn't proved to be a problem in the past is all that persuasive. Well, the, I, the third priority doesn't, hasn't been on the books for all these years, and it would apply to any form of property that meets these criteria. So what other States do with stored value cards, as long as they're asserting an interest in them, and as this is the law of most of the States in this Union, there's no reason to foresee a conflict that hasn't happened in the past, and there's no reason why it should. Particularly once the address collection information requirement kicks in, then the information available to the State as to the address information purchaser somewhat diminishes moving forward the importance of this provision. Okay. How about your contracts cost argument? Your Honor, thank you. The Supreme Court has disposed of this issue, suggested in plain and clear language that there is no tractable right to unclaimed property funds. It doesn't grow up as a, it doesn't become an implied part of the contract. In fact, in Anderson, they suggested that the contracts don't deal with the abandonment of unclaimed property because that's properly a function of the State. They have also concluded in Connecticut Mutual Life that the State is not bound by conditions that may be appropriate as between the parties because they act not as a party to the contract but as a conservator there too. So the conditions that might apply as between parties to a gift card do not apply to the State acting in its conservatory fiduciary capacity. In the absence of a contractual right to the unclaimed property, to the abandoned property, there can be no impairment because no contract exists. You don't even get past the first stage of the General Motors or other applicable contracts clause analysis. There is no contract as to the unclaimed property. The Supreme Court, that's been the law in this country for 90 years since security savings. And so the trial court erred. There is a contract, however, is there not? There is a, assuming there's a contractual agreement, there's terms of agreements between the purchaser and the issuer as to how the card can be redeemed. And that has not been changed. How so? What if the stored value card is simply to allow the purchase of merchandise, not to redeem for cash, but only for merchandise? That has not been changed, Your Honor. Between the parties, that is still all that can be redeemed. Yes, but you don't escheat merchandise. You escheat only the cash, correct? That's correct, Your Honor. And the State is not a party to that contract. So what the issuer is required to pay to the State by way of escheat is cash, when what the issuer is required by contract to provide to the owner of the card is merchandise up to the face amount of the card. That's right, Your Honor. But what's being protected is the entire corpus of the owner's property. And the property, the owner did not buy the stored value card with goods and merchandise. They paid in cash, and that is the property. But how is that not some impairment of the contractual right of the issuer here, who never contracted to provide money, but to provide merchandise, which might, in fact, more than might, which his incentive to earn a profit in business of plan and practices, in most cases, will provide some return of profit to him? Well, that is still the understanding as between the parties, Your Honor, is that Chapter 25 did not say that consumer could go into the store and redeem that for goods or redeem that for cash. So all the State is doing is the State is not bound by the same conditions that might apply as between the parties. I understand that. That's clearly the result. Right. But my question is, why does that not, in some way, impair the contractual rights that existed between the original parties? Because there's been no, there was no contractual term implied or otherwise as to how the abandoned property would be disposed. And that's what security savings teaches us, that there is no, that as the property pre-abandonment, that might be the case. But once it's been abandoned, the parties cannot contract to that. And that's been New Jersey law since Jefferson Lake suffers that parties cannot privately contract for private as cheap. So you have the parties not, whatever terms between the purchaser and the issuer have not had implied or expressed terms about how to dispose of the abandoned property. And that's what's at issue here, is not the redemption of the card, but rather what happens to the unclaimed property. And the New Jersey legislature has determined that that would be reportable by the face value upon its abandonment. Mr. Lughi, I'm not sure which part you were intending to argue at this point, but what about the data collection piece? Did you want to wait until the other side argued on that? I was going to, I mean. If you were, then I'll defer until you get to that point. Whatever the court would like to do, I would like to, I'm sorry, I forgot to mention at the beginning, I'd like to reserve five minutes for rebuttal. So the district court properly concluded that the data collection requirement offended no aspect of federal law. In fact, it directly serves the state's interests under the first priority identified in Texas, and the Supreme Court has twice noted that problems of litigation and otherwise might very well be avoided by states if they engage in appropriate data collection. So the district court properly concluded that the data collection requirement established by Chapter 25 is modified in the treasurer's September 23, 2010 guidance, perfectly comported with federal common law. The district court properly concluded that and denied the issuers' plea for injunctive relief because they failed to identify any constitutional or federal infirmity with the data collection requirement. So the district court also properly rejected any of the remaining claims raised by the plaintiff on Crossfield, and if I could, can I just reserve the balance of my time? But on that data collection piece, isn't the place of purchase presumption and the data collection element of Chapter 25, aren't they intertwined from a statutory perspective? They are not, Your Honor. They function in different directions. The place of transaction rule, which I would stress, is different than a place of purchase presumption because a presumption would seem to displace another state. The place of transaction rule only operates in the absence of an address attached to the record. Moving forward, when the data collection is operative, you'll be able to identify, based on the information collected, which state is entitled to it under the first priority rule. So you will know the last known address based on the debtor's books and records. And so they do operate independently, and the question under New Jersey state law severability is whether they're so intertwined, whether they can operate independently. And here the district court properly concluded that they do operate independently, one, in the absence of zip code data, and the other, moving forward, when such information is available. And, you know, on Internet, there are probably small numbers of sales now where that information is collected, telephone or Internet sales, or somebody's buying a card. So in those, it doesn't rely on a place of transaction or other thing. It just relies on the last known address of the purchaser. Good. Before you sit down, we'll give you six and a half minutes on this. We're still on preliminary injunction, is that correct? Yes, sir. And have any plans been made as to what happens after this court rules? We're still at a preliminary stage. Or has that been discussed between the parties at all? It has not been discussed. The court has given no indication. Nobody's asked for a hearing on the final injunction, I take it. I think everything has been held in abeyance, pending this court's consideration of several appeals and cross-appeals motions. Good. We'll have you back on rebuttal. Thank you, sir. Mr. Zuckerman. Oh, yes. You're right. You told us about that. I forgot. Mr. Cole. Thank you, Your Honors. I will be focusing on the priority rules and the contract clause. First, it's clear the statute on its face is not consistent with the Texas rules. Chapter 25 violates Texas. It's plain and it's clear. It eliminates the debtor's state of incorporation and replaces it with a place of purchase presumption, which was expressly rejected by the Supreme Court. Counsel doesn't even make an argument in any way, shape, or form that Chapter 25 even remotely satisfies the Texas priority rules. Based on that, Chapter 25, as it was originally enacted, is preempted by the Texas cases. The state tried, as Your Honor, Judge Sirica indicated, through the guidance tried to really correct this by enacting the treasurer. I am not going to address that. Mr. Burns will do that, but that was an improper action on behalf of the treasurer. The guidance which the treasurer enacted in an effort to try to resurrect Chapter 25 only applies retroactively. They did nothing on a prospective basis. That means prospectively Chapter 25 is gone. And not only does the contract clause, which I'll address in a few minutes, preempt the statute, the guidance, on a retroactive basis, the tertiary rules, or the tertiary rule which the state tried to adopt, violates Texas as well. As a matter of fact, the court said that these rules that they prepared are the rules that everyone should follow and no state should supersede them. The action taken here by the state violates the sovereign right of the debtor state to determine whether or not to achieve, and at the same time, violates the right of a corporate entity to incorporate in a state based on that state's laws. In constructing the rules, the court examined where the interests lie and conferred rights on only two states, the creditor in the first instance and the debtor in the second. They defined those terms for astute purposes to avoid claims by a forum such as New Jersey here with no continuing relationship to the parties. As the Delaware court said, the secondary rules protect the debtor state as sovereign over the remaining party to the underlying transaction. The court went on to say they award the right, the right to astute, to the debtor state of incorporation, subject, by the way, to the claims of a state with a superior right to astute under the primary rule, not subject to some tertiary rule under the primary rule. Moreover, as the trial court found below, states have a right not to astute. Many states do not astute gift cards. Neither New Jersey nor any other state can infringe on the debtor state's sovereign right not to astute but to limit astute, and a debtor corporation's right to rely on that. Also. Let me, let me, let me go back to the beginning. Was, was Judge Wilson correct in applying the priority rules for a private party in this instance? Yes, Your Honor. Judge Wilson was correct in terms of a priority, because the Supreme Court could not be any clearer. In the three cases, it had this three times, and each time it said the exact same thing. It constructed the rules to promote ease of administration and equity for everybody to follow. It adopted two rules, not three rules, not four rules, to settle the question of which state would be allowed to astute abandoned and tangible property. And more particularly, it said no state may supersede such rules by purporting to prosecute a different priority under state law. The court could not be clearer. It put a fine, fine point on it. They said they're unwilling to decide each case over and over again based on different facts. They're not looking to devise new rules. And they instructed any state that if they were dissatisfied, they could go to Congress. Not, not this. Moreover, the only two federal courts that have addressed the very point that Your Honor indicated is the court below and American Petrofina. And American Petrofina, the Tenth Circuit specifically said that private litigants can rely on the Texas Priority Rules to prevent state officials from enforcing state law in conflict with those very rules. And moreover, Your Honor, going back to the tertiary rule, just for a second, as Your Honor indicated to counsel only minutes ago, the Supreme Court took great pains on three separate occasions to go through these rules. And they fully understood that a state might not eschew a given, a particular property. They understood that. As a matter of fact, they built it into the rules. The secondary rule only comes into place if you don't have the address of the creditor or if the creditor's state does not have an eschew provision. They understood that. And they understood that a debtor's state might not eschew. But they did not adopt a third rule. Had they wanted to, the Supreme Court could have. The idea, as counsel suggests, that the Supreme Court in three decisions left the door open or intended each state to come up with its own third priority rule at its own discretion, let alone one based on the place of purchase which is specifically rejected in all three of their cases just absolutely strains credulity. And, Your Honor, now I'll address the contract clause, if that pleases the Court. Prior to this, there was no eschew with regard to gift cards. Gift cards is a separate animal unlike anything that the courts have dealt with before. As the Court addressed with counsel before, gift cards are purchased and usable for goods and services only and generally can only be redeemed at that retailer's location. There's no expiration date. It's not redeemable for cash. Upon the sale, the money is the seller. The buyer only has a right to redeem. This is no different than store credit. How many times have you gone to a store after maybe 30 days and the store, they're not going to give you your money back. They say you have store credit. And in either case, the purchaser cannot redeem for money. All the purchaser can do is get their merchandise or get their services, the funds of the sellers. And at a minimum, the seller has an expectation of profit. What's instructive here is the definition of debtor that the Supreme Court gave in the Delaware case. For escheat purposes, the Supreme Court defined debtor as follows. Funds held by a debtor become subject to escheat because the debtor has no interest in the funds, precisely the opposite of having a claim to the funds of an asset. Yet that is not what we have here. The issuer does have an interest in the funds. That's why the cases relied upon by the state, they were of no moment, Standard Oil, Connecticut Mutual, the debtor was holding someone else's money, be it stock, be it dividends, be it life insurance proceeds, where the owners died or nobody knew where they were. It had nothing to do with the proceeds of the debtor. They were just holding them. That's not the case here. Thus, based on this, the state has no authority to escheat such monies, let alone a legitimate and an important interest. Moreover, as the district court found, the state has provided no reasonable justification or accommodation for taking of the issuer's money or profits. The perfect example is the following here. What happens in the situation in which somebody goes to a store and buys a gift card? If two years go by... We'll give you two minutes. Thank you, Your Honor. I'll be less than that. But if somebody goes to a store and buys a gift card, all they can do with that gift card is, again, they can go back, they can get merchandise, they can get services. Two years go by. Under the state's position, the seller then has to escheat the money to the state. The purchaser could then go to the state and redeem the money. What the state has then done is nullified the contract. The purchaser never had such rights. They never had an ability to do that. Their sole right was to get goods or services. That's plainly an impairment of the contract. And the same happens the opposite way. If there's no reimbursement by the purchaser, the seller still has to give the money to the state, and they lose all of that money. That can't be the case. And I'll make one other just brief point in a couple of seconds. As the district court noted, many states, and even the Uniform Unclaimed Property Act, even allow for profit to the extent there even is a sheet of gift cards. Council has submitted the appendix laws of various states. My understanding is 31 of the states do not even provide for a sheet of gift card to where there's a situation where there's no expiration date or in which it's not redeemable for cash. And beyond that, 39 of the other states provide various accommodations, be it an accommodation for profit or a limitation of the escheme to begin with. New Jersey has done none of that. They made no such allowance. And unless the Court has any other questions, no. Thank you. Thank you, Mr. Zuckerman. I'm sorry, Mr. Cole. I apologize. Now, Mr. Zuckerman. May it please the Court. I'm Richard Zuckerman. I represent American Express Prepaid. With the leave of the Court, I'd like to reserve three minutes for rebuttal on the Cross Appeal. Very good. On half of American Express Prepaid and the other SVC issuers, I would like to focus on two issues that are central to the Cross Appeal. The first is not only is Chapter 25 preempted under federal common law under the Texas against New Jersey rules, but Chapter 25 is also preempted by federal statute, the Credit Card Act of 2009. And second, on each of these issues, preemption on federal common law as well as preemption by statute, I'd like to address the appropriate scope of the injunction, which I will respectfully submit leads the Court to the conclusion that the two-year abandonment period, the place of purchase presumption, and the data collection requirement, all of the unclaimed property provisions of Chapter 25 should come within the scope of the preliminary injunction. The Federal Credit Card Act, passed in 2009 to address principally credit cards but also addresses stored value cards, has a very simple requirement, a very simple preemption rule. It expressly preempts, quote, inconsistent, unquote, state laws. The Federal Reserve Board, which has authority to implement regulations under the Credit Card Act, has stated that state laws are inconsistent if they, quote, require or permit, require or permit, unquote, an act that is prohibited by federal law. So that's the question on statutory preemption. Does Chapter 25 require or permit an act that's prohibited by federal law? The Credit Card Act requires that SVC issuers honor SVCs for a minimum of five years. There can't be an expiration date shorter than five years. Some SVC issuers, such as American Express Paypaid, elect to issue SVCs with no expiration date at all. And the Federal Credit Card Act provides that not only can't you impose an expiration date shorter than five years, but if you either don't impose an expiration date or you don't properly disclose an expiration date, an SVC issuer must honor the SVC indefinitely. So let's put that up against Chapter 25. Chapter 25 says, after two years of inactivity, and, of course, if an SVC isn't used at all from the date of sale, that two years could be as soon as two years after sale. After two years of inactivity, the proceeds of the not-yet-used SVC are to be paid to the state. But Chapter 25 has a related provision, and it says that once the SVC issuer pays those funds to the state, the SVC issuer is, quote, relieved of all liability, unquote, on the SVC. The SVC issuer is permitted to honor the SVC, but it can do so or not at its own choice, according to New Jersey law. According to New Jersey law, the SVC issuer is explicitly authorized by New Jersey law to dishonor an SVC. So the question under the board regulation is... But need not do so. But need not do so. That is correct, Your Honor. So how is there a conflict? Isn't it possible, in other words, to satisfy both statutory requirements? It is possible to satisfy both statutory requirements, but only by paying twice. And so let me go through the three steps towards that. First step. If American Express dishonors the SVC, pays the funds to the state after two years of inactivity, and then dishonors the SVC, it violates the Credit Card Act. If it holds onto the funds after two years of inactivity so it has them available to honor the SVC and honor the Credit Card Act, it violates Chapter 25. The only way to abide by both laws is to pay twice. After two years of inactivity, pay the funds to the state, and then continue to honor the SVC for the minimum five-year period, or if it doesn't expire, indefinitely. Mr. Zuckerman... Mr. Zuckerman... Yes, Your Honor. If I could ask you a question. But the purpose of the Credit Card Act was to protect the consumer. Absolutely. Okay. Now the consumer hasn't lost anything under Chapter 25 because the money that he or she is entitled to under the Steward Value Card can be collected from the state. It can be collected from the state in perpetuity. The consumer loses a substantial amount under Chapter 25, Your Honor. That would be my question. How does a consumer lose anything? Your Honor, if I may just finish my answer to Judge Smith's question and then return it to your question. Certainly. So the problem with paying twice is that requiring an SVC issuer to pay twice is a violation of the Due Process Clause. The Supreme Court explicitly so held in the Western Union case, which preceded the Texas against New Jersey trilogy, and specifically held that it was a violation of due process for a state to take funds as unclaimed property unless it can assure the holder that the holder, quote, will not be held liable in a suit brought by a claimant, unquote. That's from the Western Union case. Here, if American Express, after paying the funds to New Jersey after two years of inactivity, dishonors the SVC, American Express most certainly would be held liable for violating the Credit Card Act and for violating the terms of its contract with the SVC owner. So if the only way to comply with both statutes is a violation of due process, then the statute fails. Chapter 25 fails under both preemption and the Due Process Clause. And if I may... Under your third scenario, it could not be reclaimed from the state? Yes, it can be reclaimed from the state, but Western Union protects more than that. Western Union says you should not be held liable to a claimant in a suit brought by a claimant, and Western Union does not suggest that any way indemnification by the state or a right of reclamation by the state would mitigate that. And, Judge Fischer, if I may, the consumer is far worse off under Chapter 25. What the Federal Credit Card Act guarantees is that a consumer who has an SVC in his pocket or her pocket can use the SVC for a minimum of five years, and if it doesn't have an expiration date, indefinitely. It can go into a store or go online and use it to purchase goods or services, which is exactly what the consumer set out to do. What Chapter 25 does is suggest that the state will create a reclamation process where the consumer, if the consumer knows that the underlying funds went to New Jersey rather than some other state, which the consumer might not know because they might have gotten the SVC as a gift from someone else and they might not remember where they got the SVC, but if the consumer could figure out that New Jersey was the right state and knew how to go through the reclamation process, yes, the consumer might be able to get the money back. But that is far less favorable to the consumer than the consumer getting what the consumer set out to get, which is the right to use the SVC in accordance with its terms, either without an expiration date, if it so provides, or under federal law for a minimum of five years. If I may turn briefly to the question posed by Judge Fischer of Mr. Logie with respect to the data collection. The issue isn't whether the data collection, as Mr. Logie states, whether the SVC issuers, quote, failed to identify any infirmity, unquote, in the data collection. That's not the issue. The issue isn't whether the New Jersey legislature could have enacted the data collection clause as a stand-alone provision. The legislature didn't enact the data collection clause as a stand-alone provision. It was intertwined with the unconstitutional place of purchase presumption. Whether one calls it a safe harbor to the place of purchase presumption or an alternate means of compliance with the place of purchase presumption or a sanction for not abiding by the place of purchase presumption, they're interrelated with one another. And when a state passes an interrelated statute of that nature and part is deemed unconstitutional, the rest should fall unless this court can say, in the New Jersey Supreme Court's words, quote, with assurance, unquote, that the legislature would have enacted it alone. Thank you, Your Honors. I hope I've still reserved three minutes for rebuttal. We'll give you your three minutes. Any questions? Thank you. Thank you, Mr. Zucker. Mr. Burns? May it please the Court. James M. Burns, Genova Burns and Jan Tomasi, Newark, New Jersey, appearing on behalf of the New Jersey Retail Merchants Association, one of the SBC issuer plaintiffs in the underlying action. Your Honor, I'll address two issues. First, if the injunction is not continued, the retailers will suffer a taking of their property by the implementation of Chapter 25. And secondly, that this court, in determining the constitutionality of Chapter 25, under Texas v. New Jersey, should not consider the guidance issued by the treasurer subsequent to the passage of the law for reason that the guidance is a rule and meets the definition of a rule under New Jersey Law of Administrative Procedure and they didn't follow the rulemaking process. Turning first to the takings issue. On the guidance issue, did Judge Wolfson address the rulemaking aspect in her opinion? I don't recall that she did. Judge Wolfson. I mean, that particular point. Not that particular point. In fact, what Judge Wolfson said was that on page 69, she says that a state agency may flesh out statutory directives through subsequent rulemaking. She quotes Metro Media. That's exactly our point. There was no rulemaking here. So I believe that Judge Wolfson was in error in her conclusion. And you raised that rulemaking argument? We did. Before her? Okay. Mr. Burns, it doesn't make a difference, though, if we agree with Judge Wolfson on the place of purchase presumption, does it? I think that's correct, Your Honor. Okay. Under the taking clause, we are required to look at the transfer of property rights that happens when a gift card is purchased. When a customer walks into one of our retailers' locations in New Jersey, let's say they ask for a $100 gift card, and the customer gives the cashier a $100 bill and in exchange gets an activated gift card, that customer at that moment in time has transferred in its entirety that customer's property rights in the $100 that was used to purchase the gift card. That customer no longer has any right or any legal basis to reclaim or recover that purchase price. That customer, more importantly, did not give the $100 to the retailer to hold in escrow or as a deposit or as the customer's conservator or custodian or any of the other terms that the state uses. On the other end of the transaction, the retailer has, from that moment forward, complete dominion and control and ownership of that $100. They can do with it as they please. It goes into general revenue. The retailer has income. And most importantly, the retailer, from their point of view, did not accept the $100 under some agreement that they're going to hold it as a deposit for the customer to be reclaimed at some later point in time. Is that create in the retailer, the issuer, some right to earn a profit?  The retailer has a right to earn a profit. All right. So if we were to reject the theory adopted by the district court that there is a right to earn a profit, your takings clause claim fails, does it not? I'm not so sure I follow. The retailer, as part of the underlying contract, has a right to earn a profit and does earn a profit on the proceeds, on the cash that's paid for a gift card. It's their property right. From that moment forward, the retailer has full possession and control. It's been transferred. The only contract that matters is what takes place, the property rights transferred between the customer and the retailer at the time that the gift card is purchased. And the retailer has, at that moment in time, complete ownership. The determination of the amount of the profit is subsequently determined after the card is redeemed, or if the card is not redeemed, then the entire amount is profit. So if the statute is not enjoined and the retailers are required to hand over, the statute effectuates a per se taking because it requires the entire sum to be handed over to the state in money. And thus robs, at that point in time, the retailer of its right to earn a profit and to keep the funds because it is their money. The estate laws do not in any way, they don't and couldn't, change the nature of the contractual relationship between the customer and the retailer at the point of the transaction. The estate laws are derivative in nature. And so in this case, the state can do no better than to stand in the shoes of the customer, which has surrendered and has no right in contract or law to recover the funds. Judge Wolfson, below, found in the uncontroverted facts section of her opinion, that these gift cards at issue are never redeemable for cash. The New Jersey Appellate Division, in the November 8, 1996 determination matter, discussed the nature of these contracts. And under New Jersey law, the customer would have no basis to require at any point in time, subsequent to the purchase, the issuer to convert that money back to cash. And so the state here, under the guise of a street, is trying to acquire something that the customer, him or herself, wouldn't have. It meets the definition of the takings clause because, first, the retailers have a property interest in the funds which they receive at the time of the transaction. It's income to them. And the state requires them to turn it over in full at the time. We're throwing terms of rights around, it seems to me, without defining them with perhaps greater precision than necessary. They're certainly not unconditional rights to the face value of the stored value card. Well, they have an intangible promise that they've made to the customer to honor the card for goods and services up to the face value. Absolutely. Right. So if that's the obligation, then what else is there other than the right to some residual profit, or if not a right, at least some expectancy to a profit in some residual amount between the cost of the goods provided and the amount of the card purchased? That is the amount of the retailer's profit in the typical transaction when the card is redeemed. If Your Honor's question is asking about Well, my question is what more of a right does the retailer have than that? It's not a right to the face value of the card, and that's what I understood you to be saying. Well, I am saying that at the time the card is purchased, because the customer has tendered to the retailer cash knowing it can never get it back, that at that point in time, that money is income to the retailer, and it is the property of the retailer. What happens subsequently is up to the customer. If the customer comes in, and depending on what the customer purchased, the profit margin could, of course, vary all across the lot. Or be completely wiped out, for that matter. There may not be any profit realized at all, depending upon market conditions. I suppose if it was redeemed, if the cost of goods was equal to the face value. But by the same token, if the customer does not turn up, the retailer, that's what's termed as breakage, and that is in the nature of how the gift card business is established, is at all times the property of the retailer. And the state cannot change that contract in the guise of an escheat law. That's not to say the state doesn't have a power to address that issue through some other type of legislation, but this particular statute doesn't change that. With the court's permission, I'll go to the rulemaking issue. Fine. My colleague, Mr. Cole, addressed the substantive deficiencies in Chapter 25 and the guidance. Our point in this jump is to emphasize to the court that the lower court was incorrect when it upheld the effect of the guidance. Basically, agencies can do two things. They make rules and they enforce those rules. In New Jersey, the definition of an administrative rule is found in the Administrative Code. We'll give two minutes. And it was further fleshed out by the court in the Metro Media case. Our position here is that even assuming that the treasurer had the authority in the enabling legislation to enact the guidance dealing with the priority rules, and even assuming that the policy expressed by the treasurer in the guidance was reasonable, the guidance should still be disregarded by the court because it meets the definition of a rule under the Metro Media case, and as such, the treasurer had an obligation to do formal notice, opportunity for comment, and to go through the hearing process and formal rulemaking before that could take effect. The purpose of this aspect of our administrative law is to give the regulated community the opportunity to participate in the formulation of the rule. It meets all of the six points that are in the Metro Media test for what constitutes an administrative rule. In particular, it contains a legal standard that is not otherwise clearly or obviously inferrable from the enabling legislation because the guidance changed the priority scheme. And for that reason and the other factors that are identified by the court in Metro Media, it changed the status quo that this was a rule and should have been subject to the administrative rulemaking process before it took effect. Any other questions? No. Good. Thank you, Mr. Burns. Thank you very much. Mr. Logie. Your Honors, Texas addressed the ability that states who don't assert a right on the property can participate in the discussion of who gets to its chief. Illinois sought to intervene in the Texas litigation, but it asserted no right to the property. The court denied its intervention. Florida sought to intervene and asserted a right to the property. It was permitted to intervene. There is no authority in Texas or otherwise to suggest the district court's conclusion that the federal common law affords, say, some affirmative right to not eschew unclaimed property. There's nothing in Texas, there's nothing in Delaware, there's nothing in Pennsylvania, and Texas's treatment of states who don't assert an interest suggests that the court was unwilling to hear from states who didn't want a piece of the property. The court, in exercising its original jurisdiction, recognized the state's sovereign interest in regulating unclaimed property. The court ordered those priorities among the states. It did not truncate that authority on behalf of some private party who wouldn't be able to sue a state federal court absent the state's consent. There is nothing in those cases to reach the abrogation of the state's immunity that the district court effectuated here. The stored value cards are a new and emerging form of property, but they're not unique. The purchase of the property of the don't aren't in some other format. There were gift cards that were covered by previous forms of unclaimed property acts. This is the modern version thereof. The district court recognized that different states have taken different approaches to addressing this. There's no constitutional significance between the legislature's decision to do 100% of abandoned property or 60%. That's a legislative choice. With respect to the CARD Act, the Federal Reserve Board specifically addressed this issue and rejected the claim that they should preempt the state's achievement laws. The board recognized that greater protection is the crucial issue and specifically noted that states' unclaimed property laws like New Jersey specifically allow for mechanism. This court should defer, as in the usual course, to the expertise of the agency assigned to administer this law. The APA, I would just reiterate that this court has no jurisdiction over purely a state law claim. It's not a 1983 claim. The court doesn't have supplemental jurisdiction over a state law claim under RAGOR. As far as the takings, it is not a takings because the Supreme Court has said over and over, and it leads all of the major opinions in this area, that the property is the right of the creditor, not the debtor. Absent a property right, Bill, there is no takings. And here we have the property belonging to the owner, not the holder. The takings claim here tries to put the holder's interests, possessory interests, over the owner's legal interests in these funds. Any other questions? Mr. Levy, thank you very much. Thank you, Your Honors. Mr. Zuckerman. May it please the Court. In their brief, the only argument made by the State on the Credit Card Act was an argument that the Federal Reserve Board had rejected the preemption issue. That's simply wrong. On page 43 of our principal brief on the Steward Value Card Appeal, we quote in full the statement of the Federal Reserve Board on whether or not stay-to-sheet laws would be preempted. And I won't read it in full. That would take all of my three minutes. What page, please? It's at page 43 of the principal and response brief of American Express prepaid. And it's the block quote towards the bottom of the page. It begins with the phrase, stay-to-sheet laws vary significantly, and it ends with the phrase, as such, the Board believes it is not feasible or prudent to make a preemption determination that applies generally to all states. So the Federal Reserve Board said very decisively, we're leaving it in the hands of the courts. The Federal Reserve Board did say one thing very, very clearly, and that is the regulation that says that a state law which, as is quoted before, either requires or permits an act that's a violation of the federal law is preempted by the federal law. Chapter 25 permits SVC issuers to dishonor SVCs after two years of inactivity. The Credit Card Act prohibits exactly that. So the preemption is clear. And as I noted in my main argument, the only way of complying with both laws is to pay twice, which is a violation of due process as held by the Supreme Court in Western Union. This is here on appeals from a decision which granted in part and denied in part the preliminary injunction motion. This Court, first Judge Sirica and later this panel, granted emergent relief in joining all of the unclaimed property provisions of Chapter 25 pending this hearing. We respectfully request on behalf of all of the SVC issuers and also on behalf of American Express and the Travelers Check case that this Court issue a preliminary injunction which enjoins all of the unclaimed property provisions of Chapter 25 applicable to both the Travelers Checks and Stewart Value Carts. Thank you, Your Honor. Good. Thank you, Mr. Zuckerman. The case was very well briefed and very well argued. We will take the matter, both matters, under advisement. The Court would like to have a transcript made of the oral argument and ask both parties to share the cost of that, 50-50. And if you will check with the clerk's office, they'll tell you how to do that. With thanks from my colleagues, the matter is now adjourned.